UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BOLLINGER SHIPYARDS LOCKPORT, L.L.C., | * | CIVIL ACTION |
| | * | |
| Plaintiff, | * | NO. 08-4578 |
| | * | |
| VERSUS | * | SECTION "E" |
| | * | JUDGE MORGAN |
| HUNTINGTON INGALLS INCORPORATED, | * | |
| | * | MAG. DIV. (3) |
| Defendant. | * | MAG. JUDGE KNOWLES |
| | * | |

* * * * * * * * * * * * *

**MEMORANDUM OF HUNTINGTON INGALLS INCORPORATED
IN OPPOSITION TO MOTION OF BOLLINGER SHIPYARDS
LOCKPORT, L.L.C. FOR INTERLOCUTORY CERTIFICATION
UNDER 28 U.S.C. § 1292(B)**

The Court should deny Bollinger's motion for interlocutory certification under 28 U.S.C. § 1292(b). The question Bollinger identifies as warranting interlocutory appeal is not a controlling question of law, and there are not substantial grounds for a difference of opinion about the correct resolution of it. To comply with the Contract Disputes Act, a claimant must certify the amount for which it believes *the government* is liable, and Bollinger cites no authority for the proposition that a claimant can satisfy this requirement by certifying that *someone other than the government* is liable. The Court unquestionably got it right. Moreover, granting an interlocutory appeal would be far more likely to prolong the ultimate termination of this litigation than to advance it.

**I.  LEGAL PRINCIPLES**

The final judgment rule is a bedrock principle of federal jurisprudence. The rule promotes efficient judicial administration and emphasizes the deference appellate courts owe to

the district judge's decisions on the many questions of law and fact that arise before judgment.[1] Permitting immediate review of every trial court ruling would not only result in unreasonable disruption, delay, and expense, but it would undermine the ability of district judges to supervise litigation.[2] The final judgment rule preserves the respect due to trial judges by minimizing appellate court interference, reduces the ability of litigants to harass opponents, and keeps the courts from getting bogged down by a succession of costly and time-consuming appeals.[3]

Because of the firm congressional policy against piecemeal appeals[4] and the importance of the policies underlying the final judgment rule, exceptions to the rule are rare. The Fifth Circuit disfavors interlocutory appeals and permits certification under § 1292(b) only in exceptional cases.[5] Permission to appeal under § 1292(b) should be granted sparingly, not automatically.[6] As this Court has recognized, improper use of the statute could result in fragmented, piecemeal appeals that complicate and delay litigation.[7] The moving party bears the burden of demonstrating that certification is appropriate.[8]

---

[1] *Richardson-Merrell, Inc. v. Koller,* 472 U.S. 424, 429 (1985) (citing *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374 (1981); *Flanagan v. United States,* 465 U.S. 259, 263-64 (1984)).

[2] *Id.*

[3] *United States v. L. J. Garner,* 749 F.2d 281, 284-85 (5th Cir. 1985) (citing *Flanagan,* 104 S.Ct. at 1054 and *Firestone,* 449 U.S. at 374).

[4] *Southern United States Trade Ass'n v. Unidentified Parties,* 2000 WL 2790182 at *2 (E.D. La. July 14, 2011) (citing *Henry v. Lake Charles Am. Press., LLC,* 566 F.3d 164, 170-71 (5th Cir. 2009); *Abney v. United States,* 431 U.S. 651, 656 (1977)).

[5] *McLaurin v. United States,* 2008 WL 782487 at *1 (S.D. Miss. March 24, 2008) (citing *United States v. Garner,* 749 F.2d at 281).

[6] *Alabama Labor Council, AFL CIO, Public Employees Union, Local No. 1279 v. Alabama,* 453 F.2d 922, 924 (5th Cir. 1972).

[7] *United States v. Allstate Insurance Co.,* 668 F.2d 780, 816 (E.D. La. 2009).

[8] *Id.* at 813.

An interlocutory appeal under § 1292(b) "assuredly does not lie simply to determine the correctness of a judgment of liability."[9] For an interlocutory order to be certified for appeal, it must involve a controlling question of law as to which there are substantial grounds for a difference of opinion, and the court must find that granting an immediate appeal may materially advance the ultimate termination of the litigation.

"[A] controlling question of law means 'an abstract legal issue' such as 'the meaning of a statutory or constitutional provision, regulation, or common law doctrine that dictates the outcome as a matter of law.'"[10] Stated another way, a question of law is "controlling" only if an incorrect decision on it would later require reversal of a final judgment, either for further proceedings or for dismissal that might have obviated the ensuing district court proceedings.[11] The statute does not permit review of the trial court's factual findings or its application of settled law to the facts.[12]

Satisfying the second statutory requirement is even more difficult. As this Court has held, "'The threshold for establishing the "substantial ground for difference of opinion" . . . required for certification pursuant to § 1292(b) is a high one.'"[13] The mere fact that a party

---

[9] *Clark-Dietz & Associates-Engineers, Inc. v. Basic Const. Co.,* 702 F.2d 67, 68 (5th Cir. 1983).

[10] *McLaurin,* 2008 WL 782487 at *2 (quoting *Ahrenholz v. Board of Trustees of University of Illinois,* 219 F.3d 674, 676 (7th Cir. 2000)).

[11] *McLaurin,* 2008 WL 782487 at *2 (citing 16 Charles Allen Wright, Author R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3930 at 423-34 (2d Ed. 1996)).

[12] *Clark-Dietz,* 702 F.2d at 68-69; *McLaurin,* 2008 WL 782487 at *2.

[13] *Southern United States Trade Association,* 2011 WL 2790182 at *2 (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group,* 233 F.Supp.2d 16, 19 (D.D.C. 2002)).

disagrees with the district court's ruling is insufficient.[14] Instead, there must be genuine doubt as to the correct legal standard to be applied.[15] That settled law has been applied differently by different courts is not enough. The party seeking to pursue the interlocutory appeal must show that other courts have substantially differed in applying the legal standard.[16] Interlocutory review is not allowed merely to provide a review of difficult rulings in hard cases.[17] Nor does the lack of judicial precedent on an issue establish the required substantial ground for difference of opinion.[18]

Finally, the movant must demonstrate that granting the interlocutory appeal may materially advance the ultimate termination of the litigation. Courts should not authorize fragmented, piecemeal appeals that would likely delay litigation and prolong its ultimate termination.[19] This is especially so when a piecemeal appeal is weighed against the interests of judicial economy and of the parties in obtaining an overall conclusion of the proceedings.[20] Certification is permissible only when an interlocutory appeal "would avoid protracted and expensive litigation."[21] The Fifth Circuit has cited the four to six months that would be required

---

[14] *Id.* (citing *Branch Consultants,* 668 F.Supp.2d at 813-14; *Bush v. Adams,* 629 F.Supp.2d 468, 475 (E.D. Pa. 2009); *First Am. Corp. v. AlNahyan,* 948 F.Supp. 1107, 1116 (D.D.C. 1996)).

[15] *Id.* (citing *Kapossy v. McGraw-Hill, Inc.,* 942 F.Supp. 996, 1001 (D.N.J. 1996); *Sims v. Sunnyside Land, LLC,* 425 B.R. 284, 295 (W.D. La. 2010)).

[16] *Id.* (citing *Couch,* 611 F.3d at 633; *Harter v. GAF Corp.,* 150 FRD 502, 518 (D.N.J. 1993)).

[17] *In re Bridgestone/Firestone, Inc. Tires Product Liability Litigation,* 212 F.Supp. 903, 909 (S.D. Ind. 2002).

[18] *Id.*

[19] *Branch Consultants,* 668 F.Supp.2d at 815; *In re The Babcock & Wilcox Co.,* 2001 WL 83243 at *1 (E.D. La. Jan. 30, 2001).

[20] *In re The Babcock & Wilcox Co.,* 2001 WL 83243 at *1 (citing *Babin v. Hattier,* 1994 WL 43810 (E.D. La. Feb. 8, 1994)).

[21] *Total Benefit Serv., Inc. v. Group Ins. Adm., Inc.,* 1993 WL 98675 at *1 (E.D. La. March 25, 1993).

to decide an interlocutory appeal in concluding that granting it would not advance the ultimate termination of the litigation.[22]

## II. ARGUMENT

For the reasons explained below, the order Bollinger seeks to appeal does not meet any of the three requirements imposed by § 1292(b). The order does not involve a controlling question of law, there are not substantial grounds for disagreeing with the Court's decision on it, and granting interlocutory review would not materially advance the ultimate termination of the litigation.

### A. Whether Bollinger substantially complied with the CDA certification requirement is not a controlling question of law.

As noted above, a controlling question of law for purposes of § 1292(b) means an abstract legal issue such as the meaning of a statute or regulation that dictates the outcome as a matter of law.[23] Whether Bollinger complied with the CDA certification requirement is not an abstract legal issue but instead involves the application of unambiguous statutory and regulatory requirements to the facts of the case. Even more clearly, the resolution of this question in Bollinger's favor would not dictate the outcome as a matter of law because Bollinger's failure to satisfy the certification requirement is not the only flaw that requires the Open Items claims to be dismissed. As explained in HI's memorandum in support of its motion for reconsideration,

> [T]he CDA and FAR 52.233-1 contain both ***submission*** and ***certification*** requirements. FAR 52.233-1(c) provides that an invoice or routine request for payment may be converted into a valid claim under the CDA only by "complying with the submission and certification requirements of this clause." To satisfy the submission requirement, a claim must be made in writing and submitted "to the

---

[22] *Clark-Dietz,* 702 F.2d at 69 (citing *Note, Interlocutory Appeals in the Federal Courts under 28 U.S.C. § 1292(b),* 88 Harv. L. Rev. 607, 627 (1975)).

[23] *See* fn. 10.

Contracting Officer for a written decision." FAR 52.233-1(d)(1). The CDA itself confirms this requirement, providing that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1).

There is no minimum dollar threshold for the requirement that claims be submitted to the contracting officer. Unlike the certification requirement, the submission requirement applies to all claims. This is made clear by the fact that both the statute and the regulation impose requirements for the resolution of claims of $100,000 or less, providing that the contracting officer must issue a decision on any such claim within sixty days if requested to do so in writing. 41 U.S.C. § 7103(f)(1); FAR 52.233-1(e).

The United States Court of Federal Claims has also confirmed that the requirement of a written submission to the contracting officer for a decision applies to all claims, regardless of amount. In *Kalamazoo Contractors, Inc. v. United States,* 37 Fed. Cl. 362, 365 (1997), the contractor sought to recover a contract balance of $37,763.40. Because the claim was for less than $100,000, the certification requirement did not apply. Despite this, the defendant moved to dismiss, arguing that the plaintiff had failed to exhaust its administrative remedies by failing to submit a proper claim to the contracting officer for a final decision as required by the CDA. *Id.* at 366. The court agreed, holding that the invoice and correspondence submitted by the plaintiff was insufficient to constitute submission of a claim to the contracting officer for a final decision. The court thus dismissed the case. *Id.* at 368-70. *See also Sarang Corp. v. United States,* 76 Fed. Cl. 560, 566-67 (2007) (dismissing claim where the plaintiff had the opportunity to convert an unpaid request for $25,000 into a CDA claim but failed to do so); *Medina Const., Ltd. v. United States,* 43 Fed. Cl. 537, 546 (1999) (holding that all claims must be in writing and submitted to the contracting officer for a decision and that, in addition, claims in excess of $100,000 must be certified).

The statute, the regulation, and the case law are clear. In order to satisfy the CDA, all claims, regardless of amount, must be submitted to the contracting officer for decision. It is equally clear that Bollinger has not satisfied this fundamental requirement. Bollinger has never submitted a claim to the contracting officer for a final decision and never requested that HI or ICGS do so on its behalf. To the contrary, Bollinger made a conscious decision not to convert its requests for payment into valid CDA claims.[24]

---

[24] *Id.* at 3-4.

Because Bollinger has not sought a final decision from the contracting officer on its Open Item claims, they would be defective even if Bollinger had properly certified them. Moreover, the CDA not only requires all claims, regardless of amount, to be submitted to the contracting officer for a final decision, but it also requires any challenge to that decision to be brought (a) against the government (b) in an agency board of contract appeals or the United States Court of Federal Claims. 41 U.S.C. § 7104. As a result, Bollinger could not bring suit on its Open Items claims against HI in federal district court even if they had been properly certified. Whether they were properly certified is not a controlling question of law because dismissal of the claims would still be required.

**B.      There are not substantial grounds for a difference of opinion.**

There are likewise no substantial grounds for a difference of opinion about the Court's resolution of this question. As the Court pointed out in its ruling, the regulation "clearly requires" the certification to contain a statement that "the government" is liable.[25] There is no ambiguity and no support for the premise that a claimant can satisfy the requirement by certifying that someone other than the government is liable. Despite this, Bollinger chose to certify that HI rather than the government is liable. The reason is obvious: After the Coast Guard revoked acceptance and broke off negotiations with Bollinger over the Open Items, Bollinger decided to pursue collection directly from HI rather than from the government through a sponsored CDA claim as the subcontracts require.

In an effort to show a difference between the Court's ruling and decisions of other courts, Bollinger repeatedly asserts that the Court required strict compliance with the regulation rather

---

[25] Doc. No. 124 at 8.

than substantial compliance.[26] But nothing in the Court's opinion supports the assertion that it imposed a strict compliance requirement. Bollinger simply did not comply with the regulation, either strictly or substantially. Indeed, Bollinger did not even attempt to comply with it.

Bollinger tries to minimize its failure to comply, pointing out that it changed but a single word from the language of the regulation.[27] But asserting that NGSS (now HI) rather than the government is liable is tantamount to changing red to green or yes to no. The Court's order explains the significance of the one-word change:

> In addition to changing the certification in a material way, and one that undoes HI's ability to present the claim to the government as a claim against the government, it would be nonsensical for HI to present a claim to the government stating that HI is liable. Accordingly, Bollinger has failed to comply [with] the certification requirement contained in the parties' agreement.[28]

Not surprisingly, Bollinger does not cite any decision by any court holding that a party can substantially comply with the certification requirement by certifying that someone other than the government is liable for its claims. A claim that someone other than the government is liable, by definition, is not a CDA claim.

Bollinger argues that its "minor" change in the certification language was required by the parties' agreement.[29] Not only is there no such requirement in the agreement, but FAR 52-233.1, which the parties incorporated into their agreement, explicitly required Bollinger to certify that the government is liable for its claims. Bollinger intentionally chose not to comply with this requirement, and there is no basis for a difference of opinion about it.

---

[26] Bollinger Memorandum at 2, 6, 9-10, 11.

[27] Bollinger Memorandum at 10.

[28] Doc. No. 124 at 8.

[29] Bollinger Memorandum at 13.

8

Bollinger also asserts that "Ingalls intends to use this Court's certification holding as a sword to avoid paying Bollinger for certain claims after years of not requiring certifications."[30] In fact, HI expressly requested Bollinger nearly five years ago to "elect whether to convert the referenced price proposals and invoices, and any other appropriate proposals and invoices, into certified claims."[31] HI even brought to Bollinger's attention the six-year statute of limitations that applies to CDA claims.[32] In response, Bollinger stated that it disagreed with HI's position that it was required to convert unpaid items into certified claims, declined to provide a compliant certification, and instead chose to certify that NGSS (now HI) is liable.[33] Bollinger's new position that its non-compliant 2009 certification was sufficient to convert the Open Items into certified CDA claims cannot be reconciled with its position at the time.

Nor did Bollinger take the position in 2009 that it had ever converted the Open Items into CDA claims before then. This position was also newly minted to respond to HI's motion to dismiss. In opposing that motion, Bollinger asserted that it had certified the Open Items one time before 2009, when it submitted a settlement proposal to HI in 2008.[34] Now Bollinger claims it did so twice, not only when it submitted the proposal in 2008 but also when it submitted a separate proposal in 2006.[35]

---

[30] Bollinger Memorandum at 8.

[31] Doc. No. 104-3 at 1.

[32] *Id.* at 2.

[33] Doc. No. 104-4 at 1-2.

[34] Doc. No. 108 at 3-7.

[35] Bollinger Memorandum at 14.

At the time, however, Bollinger did not claim that its settlement proposals were intended to be certified CDA claims. And they clearly were not. As noted above, all CDA claims, regardless of amount, must be submitted to the government's contracting officer for a final decision, and "[w]hen a contractor submits a termination settlement proposal, it is for the purpose of negotiation, not for a contracting officer's decision. A settlement proposal is just that: a proposal."[36]

Bollinger's contemporaneous correspondence confirms that this is accurate. When Bollinger's Vice President of Government Programs submitted the settlement proposal to HI, he did not request that it be forwarded to the contracting officer for a final decision. Instead, he closed his letter by stating that "[w]e look forward to meaningful negotiations to conclude the closeout of the Deepwater 123 Program."[37] Bollinger's counsel also confirmed the unmistakable conclusion that its settlement proposal was not a CDA claim. Just weeks after the settlement proposal was submitted to HI, he wrote:

> Bollinger may elect to certify this settlement proposal under the Contract Disputes Act and start the interest clock if settlement is not reached in the very near future. *Gardner Mach. Corp. v. U.S.,* 14 Cl. Ct. 286 (1988).[38]

Not only does this passage confirm that Bollinger knew its settlement proposal was not a CDA claim, but the case Bollinger's counsel chose to cite is revealing. In *Gardner Machinery,* the court explicitly addressed the differences between settlement proposals and CDA claims and dismissed the case for failure to comply with the CDA in two respects: (1) the contractor's settlement proposal was not submitted to the contracting officer for a final decision; and (2) it did

---

[36] *Ellett Const. Co., Inc. v. United States,* 93 F.3d 1537, 1543-44 (Fed. Cir. 1996).

[37] Doc. No. 113-2 at 7.

[38] Doc. No. 113-3 at 8.

not include the claim certification required by the CDA.[39] Bollinger's proposals likewise do not contain the certification the regulation requires, and Bollinger did not request HI to forward either of them to the contracting officer for a final decision. They were settlement proposals, not CDA claims.

And Bollinger never certified its proposals under the CDA. Less than a year after Bollinger's counsel wrote that it "may elect to certify this settlement proposal under the Contract Disputes Act," the Coast Guard revoked acceptance and Bollinger changed its position. Since then, Bollinger has maintained that it is not required to comply with the CDA and has sought to collect directly from HI.

In fact, during the arbitration Bollinger continued to assert that its termination settlement proposal was not a CDA claim and that it was not required to pursue its termination claim through the CDA dispute resolution process. The arbitrator agreed, considered Bollinger's termination claim on the merits, and rejected it. Having arbitrated and lost its termination claim, Bollinger cannot now argue that its termination settlement proposal actually constituted a CDA certification of its Open Items claims. As Bollinger well knows, it has never certified the Open Items as CDA claims.

Bollinger relies on a total of three decisions construing the CDA, *United States v. General Electric Corp.,* 727 F.2d 1567 (Fed. Cir. 1984); *Alcan Elec. & Eng'g Co., Inc. v. United States,* 24 Ct. Cl. 704 (1992); *Metric Constructors, Inc.,* ASBCA No. 50843, 98-2 BCA ¶ 30,888 (Oct. 27, 1998), to support its argument that the Court's ruling is contrary to settled law and that there are substantial grounds for disagreeing with it. None of the decisions supports Bollinger's

---
[39] 14 Cl. Ct. at 289-94.

position. Not one of them even suggests that certifying that someone other than the government is liable substantially complies with the CDA certification requirement. Moreover, in all three of them the contractors' claims were submitted to the government's contracting officers for final decisions, and in all three of them the contracting officers' decisions were appealed to a proper forum prescribed by the CDA. They provide no support for the view that a CDA claim can ever be litigated in federal district court.

Bollinger relies most heavily on *General Electric*, asserting that the court in that case "rejected the very same argument advanced" by HI and that it approved a certification omitting the phrase the "government is liable."[40] According to Bollinger, "[t]he facts and certification in *General Electric Corp.* are nearly identical to Bollinger's June 2009 certification."

In truth, the facts and certifications in *General Electric* and this case are nothing alike. The dispute in *General Electric* was between the government and its prime contractor. In an argument raised for the first time in its reply brief, the government asserted that GE's certification was improper because it did not state a belief in the government's liability.[41] The court rejected the argument, citing GE's statements that the contract provided for an equitable adjustment and that it "believed it was entitled to the adjustment."[42] Because the contract was directly between GE and the government, GE's stating that it believed it was entitled to the adjustment was the same as stating that it believed the government was liable for the adjustment. Not surprisingly, the court found that GE had substantially complied with the statute.[43]

---

[40] Memorandum at 2, 12.

[41] *Id.* at 1569.

[42] *Id.*

[43] *Id.*

*General Electric* supports the common sense principles that a certification does not have to copy the language of the regulation verbatim and that a claimant is not required to swear to a belief in a legal theory of recovery.[44] But the decision does not change the fact that the regulation requires a claimant to certify that it believes that it is the government that is liable for the claim, and it does not support the notion that a claimant can comply with the regulation by certifying that someone other than the government is liable. Indeed, in a later decision, the Federal Circuit rejected a certification that was devoid of any language dealing with two of the three certification requirements, including the requirement that the claimant express a belief in the government's liability. The court concluded that the requirements are "easy to follow and we are unwilling to facilitate the erosion of the statute by stretching to find compliance when it has not occurred."[45]

Bollinger argues that *Alcan* supports the conclusion that it substantially complied with the CDA certification requirement,[46] but that decision actually supports the opposite conclusion. In *Alcan*, the court held that all claims under the CDA must be submitted to the contracting officer for a decision and that a proper CDA certification must include a statement that the claimant believes the government is liable for the requested amount.[47] The claimant in *Alcan* satisfied both of these requirements.[48] Bollinger satisfied neither. Although *Alcan* confirms that the

---

[44] 727 F.2d at 1569.

[45] *Reliance Ins. Co. v. United States,* 932 F.2d 981, 37 Cont. Cas. Fed. (CCH) P 76, 121 at 3 (Fed. Cir. 1991).

[46] Bollinger Brief at 11, 12-13.

[47] 24 Cl. Ct. at 706.

[48] *Id.* at 705.

standard for satisfying the CDA is substantial compliance, it does not remotely suggest that certifying that someone other than the government is liable constitutes substantial compliance.

Nor does *Metric Constructors* support Bollinger's position. Although the submission that initiated that case was a settlement proposal, the case differs from this one in several crucial respects. First, the claim in that case was submitted to the government, and the contracting officer issued a final decision on it. Here, by contrast, there has been no submission to the contracting officer and no final decision. Second, the proceeding was before the Armed Services Board of Contract Appeals, a proper forum under the CDA for an appeal from a contracting officer's decision, not before a federal district court, which is not. Additionally, Bollinger's claim that the administrative judge in *Metric Constructors* held that the settlement proposal certification language substantially complied with the CDA[49] is not valid. Instead, he ruled that the language in the proposal differed from the certification required by the CDA but that it could be corrected to comply with the requirements of the CDA pursuant to 41 U.S.C. § 605(c)(6). That statute is of no benefit to Bollinger, however, because it applies only when a contracting officer's decision has been properly challenged in an action brought against the government before an agency board of contract appeals or the United States Court of Federal Claims. No authority permits a CDA claim, much less an improperly certified CDA claim, to be brought against anyone other than the government or to be brought in federal district court.

Section 1292(b) requires the movant to establish that there is a substantial ground for a difference of opinion about a controlling question of law. Not only is there no basis for such a difference about whether Bollinger's settlement proposals and 2009 certification comply with the

---

[49] Bollinger Brief at 5.

CDA certification requirement, but Bollinger's contemporaneous correspondence establishes that there was not even an actual difference of opinion on the point. Bollinger expressly acknowledged that its settlement proposals were not certified CDA claims, and it expressly rejected HI's contention that it was required to certify its claims for sponsorship to the Coast Guard when it certified that HI was liable for them.

Bollinger's consistent position since the Coast Guard revoked acceptance has been that it is not required to comply with the CDA dispute resolution process. Its fallback position – that it actually did comply with the CDA – cannot be squared with the historical record. The Court correctly concluded that Bollinger did not comply with the CDA claim certification requirement, and there are no reasonable grounds for a difference of opinion about the Court's decision.

### C. An interlocutory appeal would not materially advance the ultimate termination of this litigation.

For two reasons, the Court's order also fails to satisfy the third requirement of § 1292(b). First, because there are not substantial grounds for a difference of opinion about the correctness of the Court's conclusion, the order would almost certainly be affirmed if an interlocutory appeal were permitted. For that reason, permitting the appeal would only delay proceedings in this Court and prolong the ultimate termination of the litigation. As noted above, the Fifth Circuit has cited the time required to brief and decide an interlocutory appeal in declining to accept an appeal under § 1292(b).[50]

---

[50] *Clark-Dietz,* 702 F.2d at 69.

Second, as Bollinger acknowledges, § 1292(b) certification should be granted only when permitting the interlocutory appeal would avoid protracted and expensive litigation.[51] The proceedings on the remaining claims in this Court, however, will be neither protracted nor expensive. HI has filed a motion for reconsideration and strongly believes that the limited remaining issues can be decided on a motion without the need for discovery or trial. Even if the Court does not grant reconsideration, proceedings in this Court on those issues will be limited. All that remains are Bollinger's claims for $100,000 or less and its allegation that HI guaranteed payment of the Open Items. Neither issue should require extensive discovery. In fact, the parties have conferred and agreed that such discovery can be completed in three to six months.

This is simply not one of those rare cases in which an interlocutory appeal has the potential to obviate a long, expensive period of discovery and a lengthy, complex trial. Granting an interlocutory appeal would not materially advance the ultimate termination of the litigation and would almost certainly prolong it.

## III. CONCLUSION

After the Coast Guard revoked acceptance of the patrol boats modified by Bollinger and broke off discussions regarding the Open Items, Bollinger decided to disregard its obligation to comply with the CDA and to pursue recovery from HI. Consistent with that decision, and as the Court correctly concluded, Bollinger did not comply with the CDA certification requirement. Reasonable grounds for a difference of opinion about this conclusion do not exist, and permitting an interlocutory appeal would only prolong the ultimate termination of the litigation. HI respectfully requests the Court to deny Bollinger's motion.

---

[51] Bollinger Memorandum at 14-15.

Dated:  November 5, 2013.

    Respectfully submitted,
**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**

BY:    *s/Amelia W. Koch*
    AMELIA W. KOCH, T.A. (2186)
    LAURIE D. CLARK (22304)
    KATHLYN G. PEREZ (30668)
    201 St. Charles Avenue, Suite 3600
    New Orleans, Louisiana  70170
    Telephone:  (504) 566-5200
    Facsimile:  (504) 636-4000
    E-mail:  akoch@bakerdonelson.com
    E-mail:  lclark@bakerdonelson.com
    E-mail:  kperez@bakerdonelson.com

    *and*

P. BROOKS EASON
(*Admitted Pro Hac Vice*)
**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**
Meadowbrook Office Park
4268 I-55 North
Jackson, Mississippi  39211
Telephone:  (601) 351-2400
Facsimile:  (601)351-2424
E-mail:  beason@bakerdonelson.com

    *and*

RICHARD B. CLIFFORD, JR.
*(Admitted Pro Hac Vice)*
**PERKINS COIE LLP**
700 Thirteenth Street, N.W.
Washington, DC  20005
Telephone:  (202) 434-1626
Facsimile:  (202) 434-1690
E-mail:  RClifford@perkinscoie.com

**ATTORNEYS FOR DEFENDANT, HUNTINGTON INGALLS INCORPORATED**

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system. Notice of this filing was sent to all counsel of record by operation of the Court's electronic filing system.

Dated: November 5, 2013.

*s/Amelia W. Koch*
AMELIA W. KOCH
